DAVID JACOBSON,                                              NO:              3

All other simular situated persons,

                                Plaintiff(s),

versus

JAMES LEBLANC, SECRETARY
LOUSIANA DEPARTMENT OF PUBLIC SAFETY
AND CORRECTION, (DPS & C),
**LOUISIANA DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONS,** Municipal Entity,
**HOWARD PRINCE, ROBERT HENDERSON,
LATERDA DRUMMOND,**

AND YET TO BE IDENTIFIED ADMINISTRATORS,

                                Defendants.

_____/

## CIVILS RIGHT COMPLAINT

1. Pursuant to 42 USC §1983, Plaintiff and all other simular situated persons bring suit alleging that their right under the United States Constitution, Amendments I, V, VIII, and XIV, and Article III, cl. 2, United States Constiution are being abrogated by the defendants, all acting under color of state law, according to the municipal policy and customs.

2. Jurisdiction is conferred pursuant to 28 **USC** 1331, 1332(a), 1343 (a)(1) and (3), and 1367(a), the amount in contraversy exceeds the jurisidcitional amount of $75,000.00.

3. Venue is conferred in the United States District Court, District of Louisiana, Middle Division, in that the domcile of the Louisiana Department of Public Safety and Corrections (DPS & C), is in the Middle Division of Louisiana, and a substantial part of the causes of action occurred in the Middle Division, wherefore, venue is conferred pursuant to 28 **USC** 1391 (b)(1) and (2).

4. David Jacobson, and all other simular situated persons, are confined or have been confined in the Louisiana DPS & C, suffered and have suffered from the acts, omissions, policies and customs of the municipality, or have been deprived of their rights and immunities by the said defendants who act state actors, and at all times relevant hereto, have acted under color of state law.

5. James LeBlanc, the Secretary of the Louisiana DPS & C, named individually and officially as the cheif executive party of the DPS & C, pursuant to LA

RS 15:823, responsible for the policy determinations of the DPS & C . James
LeBlanc is also responsible for the supervision, appointment, and training
of personal deemed necessary in the operation of the DPS & C, assignment
of duties, and discipline of employees.La RS 15: §825. In accordance with
his duties James LeBlanc has appointed Howard Prince, and Robert Henderson
to their respected positions.

6. The Louisiana Department of Public Safety and Corrections is political
subdivision, municipality, according to the Louisiana Governmental Claims
Act, LA C.C.P 13:5101, et seq., a person within the meaning of 42 USC 1983.
The DPS & C. throught it's agent's James LeBlanc, Howard Prince, and Robert
Henderson, policymakers, have engaged a course of conduct and sanctioned
and rewarded conduct that can fairly be said to represent the "customs" of
the Louisiana DPS & C, have failed to properly trian, supervise, and discipline
employees and agents, and pursuant to the moving force behind those acts
and omissions, the municipalities custom abrogated the Plaintiff's right
and immunities guaranteed by the United States Constiution.

7. Howard Prince, knew and approved of the acts and omissions as herein
said, being appointed by James LeBlanc, in the position of Warden of Hunt's
Correctional Center. James LeBlanc tactic authorized Howard Prince to act
in accordance with the customs, that have deprived the Plaintiff of his right
and immunities secured by the United States Constiution. Howard Prince failed
to properly trian, discipline, supervise agents of the municipality, under
his control, knowing that their acts and omissions would abrogate the Plaintiffs
constiutional rights, nevertheless disregard the knowing risks that cuase
the injuries and herein alleged by said acts and omissions.

8. Laterda Drummond, the Correctional Specialist I, ARDC, was appointed
or approved to act in the said capicity by Howard Prince. James LeBlanc
and Howard Prince knew that the DPS & C was not providing proper training,
supervision, discipline, of Defendant Drummond, and pursuant to the customs
as specific did violate the Plaintiff Right's as herein said. At all relevant
times Defendant, knew of, and disregard the risks, that subsequently lead
to the constiutional right deprivation knowing Plaintiff would sustain injuries.

9. Robert Henderson, knew and approved of the acts and omissions as
herein said, being appointed and approved for Warden position of Phelphs
Correctional Center, by James LeBlanc, who tactic authorized the customs
of the Henderson administration , that deprived the Plaintiff of his rights
and immunities under the United States Constiution. Robert Henderson failed
to properly train, supervise, and discipline the agents he was responsible

for which subsequently lead to customs, approved by James LeBlanc, that were indifferent to the Plaintiff rights. Robert Henderson knew that the acts and omissions as herein said, were causing, and did cause, substantial prejudice, having been specifically informed, Robert Henderson, as has history proven, failed to act to negate the damages.

10. Yet to be identified Administrative Agents, employees, and persons were appointed, or hired to assume various duties within the administration and in accordance with the municipal entities organization structure. These parties acted in accordance hereto, their acts and omissions lead and contributed to the constiutional right deprivations. The parties had a duty to act, failed to act with sufficient culpability that the Plaintiff would suffer, nevertheless consciously agreed to run the course.

11. All named parties are sued personally and in their offical capicities, acting grossly negligent, deliberate indifferent, according to the custom of the municipality, outside the scope of their official duties. The parties are not immune from liability under the aforemntioned theroies.

### CONDITIONS OF CONFINEMENT

12. In September 2009, the Plaintiff was committed to the Louisiana Department of Public Safety and Corrections, at the Orleans Parish Prison, by James LeBlanc, and in accordance with **LA RS** 15:824.

13. James LeBalnc, knew prior to the placment of the Plaintiff, of the following existing conditions, but despite this knowledge, knowing that injury would be sustained, the Defendant consciously and deliberately subject the Plaintiff to the knowing conditions in the Orleans Parish Prison (OPP).

14. Plaintiff was housed in the House of Detetnion (HOD), were he was denied basic food, shelter, medical care, outdoor exercise, access to the courts, indigent supplies, hygene products, exposed to excessive violance, lack of supervision, pests, AIDS, lack of sanitation, inter alia.

15. James LeBlanc knew that the OPP HOD was ravished by Hurrican Katrina, OPP inmates were temporarily housed in DPS & C, yet despite this knowledge the defendant agreed to subject the Plaintiff to these conditions, failed to investigate whether the conditions were informed, and had specific knowledge available from the United States Depsrtment of Justice, that the conditions were deemed damages and unconstiutional. Acting under color of state law, within the scope of his official duties, the defendant purposely and deliberately placed the Plaintiff herein without justification or penelogical purpose other then to inflict crueal and unusual punishment.

16. Plaintiff was housed in HOD in ten (10) person cells, with at least fourteen (14) persons, where he was forced to the ground without sufficent bed space to sleep. Bed covers, sheet, pillow cases, and mattress were not supplied or in short supply. Mattresses were not sanitized before passed to another person.

17. Plaintiff was routinely denied basic hygene, toothpaste, toiletpaper, and basic supplies to maintain health and hygene. The Plaintiff remained indigent completely dependant upon the OPP for basic supplies.

18. The food was served under a tier representative system, Plaintiff was often denied a minimum amount of food to sustain health and life, had to obtain food under the threat of violence, was forced to carry a shank to ensure that he obtained the food required for basic survival. The food was served under and had to be consumed in unsanitary conditions, eaten on the floor, on toilets, beds, and sat around for hours before service. The food was served without sufficient utliences, without gloves, and with bare hands.

19. The conditions were unsafe, the staff could not observe prisoners, has no sight lines, no direct contact with prisoners, the atmosphere was lawless without intervention, and Plaintiff had to fend for himself. Plaintiff was the only person not of color and staff used this as a means to attempt to intimidate the Plaintiff. Plaintiff lived under the constain threat of violence, death, and threat of rape and, had to consistently arm himself to fend off violance.

20. The treat of violance is extremely high, numerious rapes, sever beatings, deaths, have resulted with full knowledge of Defendant James LeBlanc who continues to subject the prisoners of the Lousiana Department of Corrections to those conditions.

21. The Plaintiff was deprived basic health care, pain medication, and caught staff infection, lice, and subject to excessive rish of HIV positive body fluids.

22. There was insufficient cleaning agents supplied, no disinfecting agents, for the toilet, floors, and black mold was on all the walls, the floors, in the show areas.

23. The paint was peeling from the walls, the ceiling, and bodily fluids, were caked on the walls, bunks, and had not been disinfected after hurrican katrina.

24. OPP maintains a specific citation law library system whereby the Plaintiff was required to know in advance the specif information that was required. There was one paralegal for some 3500 prisoners. The Plaintiff incurred weeks in the delay for copies, information, and legal mail service.

25. As a direct and proximate cuase of the legal advisor system the Plaintiff submitted defective pleadings, was unable to confer with counsel, defaulted on his direct appeals issues, had matters filed incorrectly, dismissed and is now in a civil dispute with his attorney and had to waive his right to appeal in the Foutyh Circuit.

26. The OPP did not have sufficient fire protections, fire escapes, and did not practice fire drills. The facilities are death trapes in case of fire.

27. The OPP did not have sufficient pest control, roaches, rats, birds, were in the prison, there was no covers on the windows and the prison was consistently exposed to the outside because the windows and screens were removed.

28. The OPP did not have sufficient plumbing or the water pressure was so low that it can be deemed inoperable. Plaintiff suffere from dehydration while in the parish prison and was consistently exposed to human waste.

29. The lack of sanitation and cleaning supplies, combined with the lack of laundry service, spread the dieses and rodants. TB and HIV were constant problems.

30. Priosners were consistently raped, beat, robbed, and are stab resulting in death and serious injury.

31. Staff cannot control the prison, the prison is under budget, under staff, and staff with unskilled correctional officers.

32. The lack of sufficient staffing renders perodical check and walks impossible.

33. At all relevant times the Defendant know of these conditions and done nothing to prevent the injuries to the Plaintiff.

34. The voice level is so loud that regular sleeping patterns is impossible leading to psychological break down, dillusions, and tension among the population.

35. The Plaintiff suffer the loss of weight, loss of motor functions, physical deteroiation in muscle tones and masses. The Plaintiff suffers from serious bouts of depression, loss of hope, loss of family ties, the community support, and his kids have all but discontinued communication

because of the attitude displayed and discontention of society in general.

36. The Plaintiff has become severally antisocial, cannot trust anyone, has reoccuring mightmare, dreams about the forced rape in the OPP, and the sever beating that he witness, the honosexual activities.

37. The Plaintiff has suffered such sever psychological damages that it is impossible to say whtether he will never be normal again.

### DETAINERS

38. On October 27, 2009, Latedra Drummond, ARDC Specialist I, placed a detainer against the Plaintiff base on the warrant and information filed by the Ocean Springs Police Department, Jackson County Mississippi.

39. The Plaintiff requested final disposition of the untried detainer and indicated his desire to waive extradicition informing Latedra Drummond that under the terms of the Interstate Agreement on Detainer Act (IAD) that the administration was required to forward various documentation to the Jackson County Prosecutor.

40. James LeBlanc did not propoerly trian, supervise Howard Prince, nor promulgate a policy directive effectively mandating a policy directive for the resolution of detainers.

41. In failing to promulgate a policy directive, various agents and employees of DPSC have been allowed to act pursuant to a custom that is contrary to the mandates of the IAD.

42. In accordance with that custom Defendant Drummond failed to transmit a demand for final resolution, waiver of extradiction, and the accompanying information required by the IAD.

43. Instead the Defendant collectively have disregarded the Plaintiff and his repeated requests to resolve the detainer and indicated in the Administrative Procedure Remedy (ARP), that the matter should be addressed at the Phelphs Correctional Center.

44. Robert Henderson, acting in accordance to the custom at the PCC, tactic authorized by James LeBlanc, has also failed to promulgate resolution of detainers policies.

45. In attempting to request final disposition of the untried detainers at PCC, Delanie Burgess indicated that she could not intervene, and J. Johnson of records indicated that she would not assist and that I should contact the Mississippis authorities.

46. Since the Defendants, agents, employees, failed to act in accordance with the IAD the Plaintiff was forced to waive counsel in the Jackson

to effectuate and preserve his fast and speedy trial rights.

47. In December 2009, and March 2010, the Plaintiff filed a state writ of habeas corpus, requesting the Parish of Beauregard to bring him before the Court and grant an extradiction hearing, The Court denied the writ however, ruled that the Plaintiff could voluntarily waive extradiction in accordance with the terms of the IAD.

48. The Plaintiff agains contact legal counsel, James LeBlanc, Robert Henerson, or their respected representatives, providing a copy of the Court Court, waiver, request for final disposition, and requested that the matter be served upon Jackson County District Attorney in accordance with the Court Order.

50. The Defendant's have continued to deny the Plaintiff his right to final disposition of the matter and disregard the Administrative Remedy Procedure attempts.

### INDIGENT LEGAL SUPPLIES

51. On October 27, 2010, the Plaintiff was transferred from the OPP to Hunt's Correctional Center, under the direction of Howard Prince. The Plaintiff was immediately taken to Administrative Segregation whereas he was stripped of all writting materials, paper, and his legal property.

52. The Plaintiff did not possess a pen, pencil, and had no way to communicate with the Administration. In accordance with Howard Prince, policy and procedures, the Plaintiff was required to write the Deputy Warden, requesting legal assistance, and indigent legal supplies, to obtain either of the same.

53. Plaintiff, at all revelvant times thereto, was denied access to either the law library, or inmate counsel, and was limited in the legal supplies as received.

54. The Plaintiff had several deadlines, including a court ordered hearing upcoming in a civil case against the Orleans Criminal Sheriffs Department.

55. As a direct and proximate cause of the policiiy directive approved by James LeBlanc, at the Hunt's Correctional Center, including the ability to arbitrarly place an offender in Administrative Segregation with Court Order deadlines, the Plaintiff missed his court date, counsel withdrew from the matter, and the Plaintiff's has been foregoing consistent attempts to recieve another hearing.

56. The Plaintiff was also delayed in filing discovery, his legal

mail in another unrelated case did not follow him, he did not have sufficient

writting materials, mail collection for indigent prisoners, nor the assistance to forward address changes to the Court and Counsel.

57. The Plaintiff lost the ability to appeal an adverse decision to the Fifth Circuit Court of Appeals, was denied the opportunity to be heard in objection to the Court's Order, and has incurred the defense of lis pendens in another matter because he did not appeal and filed another unrelated action.

58. The Plaintiff was transferred to the PCC on or about November 23, 2010. At all revelant times thereto, at Hunt's and PCC, Plaintiff has been relegated to approximately sixteen shetts of typing paper per month and limited on envelopes.

59. The Plaintiff has had to forego writting his family, father, children, in order to access the courts.

60. The Plaintiff is not allocted an ink pen and must prepare pleadings with a pencil and has remained indigent at all times relevant hereto.

61. The Plaintiff has been subjected to the loss of good-time, isolation time, penalities within the institution for access the court and assertion the right to be heard on his grievances in the Courts.

## LAW LIBRARIES

62. At all revelant times hereto the Plaintiff has been denied the physical access to the law library.

63. At OPP the DPSC operates under a paralegal program requiring the user to know in advance, and the exact citation for any material, and without such advance citation is denied information, and or case law.

64. At the Hunt's Correctional Center, the Plaintiff was subject to a system whereby he had to write the Deputy Warden to obtain an inmate counsel who would visit the cell, again under the specific citation system. The Plaintiff had no way to access this procedure because he was stripped of his writting materials.

65. At the Phelhs Correctional Center all information is contained on disks, controled by inmate counsel. Again the user is required to provide specific citation to obtain information.

66. At no times relevant hereto has the Plaintiff been provided with a secondary source, treaties, or periodical to refence for specific citations.

67. The Law Libraries, at all location, do not have opational shepards citators, at Phelphs parellel citation are provided but the between page reference makes the lexis system useless. At OPP and Hunt's the persons that accessed the information did not have working knowledge of shepards

citators, and could not distinguish between overruled cases, questioned cases, or other relevant provisions.

68. In both OPP and PCC outdate jailhouse lawyer manuels are in the law libraries and have inaccurate information contained herein in regards to exhaustion under 42 USC 1997e, in formia papuris, and other matters.

69. The libraries do not contain West Law Practice and Procedure, and the other minimum resources by the Bounds case.

70. The law libraries do not contain the Louisiana Administrative Codes, promulgations, policies, and regulation of the Department of Corrections. Plaintiff has been routinely denied forms, information regarding exhaustion of institutional remedies and has been impeded in his attempts to the ARP process.

71. The KEY note system in LEXIS at PCC is not operating properly and will not provide parellel case citation. The Plaintiff has no way to obtain any parellel reference materials, being that the Key Note System and Shepards does not function.

72. The indigent Plaintiff is required to pay to access case law and reference materials. The Plaintiff amount have been debted thousands of dollars for access the court's while indigent. If indigent the Plaintiff must pay for all writting materials, to view case law, to view shepards citators, and to send request for outside information.

73. The trade makers are deleted from LEXIS system and the case law altered when the Plaintiff is required to pay for the same. The headnotes are screened and cut from the cases.

74. All information is prescreened according to the clerk system and the clerks are operating as representatives of the administration. The Plaintiff has been denied material because it was adverse to the administration or via the prescreen process.

75. The inmate clerks are potential informers for the Administration, in Mississippi, the Plaintiff faces criminal charges and the clerks are potential agents for the government and the Plaintiff is required to waive his fifth admendment in order to obtain information from the computer systems that are totally controlled by the administration and not accessible by the Plaintiff.

76. The Plaintiff has not been able to obtain sufficient time with specific Court Orders. There are not official promulgations regarding accessing the Court via a sufficient law library, alternative resources, and arbitrary procedures are employeed to impede access to the courts.

9.

77. Clerks and staff are allowed to read legal documents prior to submission, while being typed, and while being copied.

78. The lack of clear policies allow staff to chill the Plaintiff rights to access the Court, determine how, when, and where he may obtain information, and what information will be allowed.

79. The law library does not contain any information regarding Mississippi statutes, case law, the Plaintiff is representing himself in that matter and has suffered prejudice thereof.

80. In case number 2009-0895, the Plaintiff has missed court deadlines, and the matter resulted in a fee dispute with counsel.

81. The Plaintiff was forced to file a malpractice suit against the attorney that represented him in the criminal appeal and that suit resulted in part from the inability to obtain legal supplies, and effectively confer with counsel.

82. The Plaintiff lost his right to appeal because he was unable to communicate with counsel after conviction and tender appropriate motions to presevre his claims.

83. The Plaintiff has had several pleadings returned, rejected, and had to be resubmitted because the information for proper filing was not contained or available.

84. In case number 2010-80 the entire complaint was returned and had to be refiled.

85. The Plaintiff completely lost the ability to file objection in the case in 2009-3695, submitted duplicate pleading that were improper because in OPP he did not have the Federal Rules of Civil Procedure.

86. The Plaintiff has had to waive counsel and arraignment, given up the right to a fast and speedy disposition, lost witnesses and defenses in the Mississippi matter because of the lack of information.

87. The Plaintiff has had several discovery pleading rejected because he named the wrong parties, had to file three amended complaints because he could not find the elements of the constiutional torts timely.

88. The Plaintiffs discovery in case number 2009-3695 is falling behind schedule because he cannot obtain sufficient writting materials, library time, or alternative help and the trial date remains October 2010.

89. The Plaintiff incurred a claim of lis pendens and lost the opportunity to potentially settle the matter after a favorable court ruling becuase he recieved inaccurate information in the law library.

## ALTERNATIVE TO LAW LIBRARY

90. As an alternative to the law library the DPS & C offers inmate assistance through inmate counsels. According to Departmental Regulation B-05-004, which is not promulgated pursuant to the Louisiana Administrative Act, via LA RS 15:873, counsel substitutes are "inmates who aid and assist" and "are only appointed by the Warden".

91. Inmates who are not counsel substitutes may not assist others in the prepreation of legal pleading pursuant to B-05-004. The policy directive requires training as directed by the Warden, however, the counsel substitutes are not "trained paralegals" but take a course, administred by counsel substitutes, amoung themselves.

92. Phelhs Posted Policy number #29 also governs counsel substitutes and indicates that counsel substitutes are the only ones allowed to use the law library computers. Furthermore, counsel substitutes "[a]re . . . appointed by the warden **and serve as agency representatives."**

93. All information, case law, shepards citators or like reference materials, and all other pertitent information is contained on the law library computers.

94. In order to obtain information the user must request the clerk to access the information, review the information, and the user must purchase the information if it is considered useful by the Clerk.

95. The inmate counsel must prescreen and review all information, determining whether it might or might not be of use.

96. Since the counsel substitutes are "representatives" of the administration they have an intreset in <u>not obtaining information</u> that might be adverse to the administration and place their position in jeopardy.

97. The training that the clerks recieve is not via an acredited person nor institution and is cursory at best. The inmate counsels are not selected premised on ability but upon the arbitrary determination of the administration as to who might conform to the idealogy of the administration.

98. Their are more highly qualified persons that might be able to better assist the user however are passed over by the administration as none conforming.

99. The administration has historically hired sex offender, who are more prone to passive behavior toward the administration and less likely to take adverse positions contrary to the administration.

100. Sex offenders are not eligible for trustee statutes or work release,

or other less rigoruos assisgments thus will assist the administration is greater capacities then other offenders that are not sex related offenders.

101. Robert Henderson is directly responsible for this customs of appointing such person and, the custom is approved by James LeBlanc.

102. As a direct and proximate cause of the acts and omissions of the defendant the law library, combined with the other alternative, is essentially useless.

103. Without trained or qualified person researching the materials contained on the computers the user, in particular the Plaintiff, has been unable to obtain needed information that is current and updated.

104. The system regarding shepards citations as been malfunction for some time without information received by the administration from the law clerks.

105. The law library does not contain the Louisiana Administrative Code, and the counsel substitutes have not requested the administration to provide such.

106. The promulgated administrative code contains the Administrative Remedy Procedure which is essential for exhaustion under both LA RS 15:1171 et seq. and 42 USC 1997e.

107. The counsel substitutes have provided the Plaintiff wrong information, have failed to obtain cases under municipal liability, and essential therory in civil matter scheduled for October, 2010 trial.

108. The Plaintiff has incurred delays in submission of motions to compel the production of discovery and has virtually every aspect of his cases prejudiced.

109. The Plaintiff has had to waive various constiutional right under the Constitution in order to secure others.

110. The counsel substitutes cannot answer key questions, obtain information or complex research regarding lis pendens and the resulting act and omission prejudice the ability to win a favorable ruling.

111. Many of the Plaintiffs legal action, malpractice case, are sitting inactive on the dockets because the Plaintiff cannot obtain material, information, and the time needed to obtain access to the courts.

112. The Plaintiff has incurred prejudice, and continues to incur prejudice by said acts and omission, Robert Henderson, was informed, and knows of these longstanding problems and fails to take corrective action known that Plaintiff cannot effective maintain effective access to the Court and James LeBlanc approves of these acts and omissions rewarding them through favorable headquarter audits of roc Law Library.

## POLICY AND PROCEDURES

113. James LeBlanc has failed to promulgate policy directive pursuant to LA RS 15:823, and thus has allowed each institution formulate the de facto customs approved by the Wardens.

114. Each instiution has no policy regarding Court Order deadline time for additional access to the law library.

115. Each instiution distributes indigent legal supplies differently without approved policy directives.

116. The Plaintiff has been routinely denied entery into the law library, having court ordered deadlines, missing the same, premised on the discretion of staff member making determination reagrding access.

117. The clerk are not adverse in the procedures, withold information, regarding the same said.

118. There are no promulgation for minimum law library material requirements, forms, pleading, polices are missing, information in the Department Regulations witheld from Plaintiff.

119. The policies, customs, and practices, have lead to prejudice to the plaintiffs access to present sufficient pleadings to the Court and representation in the case against him in Mississippi.

### GRIEVANCE PROCEDURE

120. The Defendants have purposely implimented, practices, customs, and procedures that trip the Plaintiff and simular situated persons up in the Administrative Remedy Procedure.

121. The Defendants know that placing procedural hurdles in the Plaintiffs way will cause the Court to deny jurisdiction.

122. The Defendants have purposely withelf forms, used backlog procedures not promulgated, and denied ARP's under unspecified terms to impede the Plaintiffs efforts.

123. The Defendants have treatened the Plaintiff for using the ARP process in an attempt to chill his access to the Courts. The have used retailatory means to prevent submission, reading the pleading that are being typed in the law library, read materials produced for copying, and discussed the issues among each other making comments in reference to matters that are confidential.

124. The Defendant's knowingly, intentionally, and deliberately are detering the Plaintiff from filing into the Court, delayed grievence responses well over the ninty-day peroid, refuse to honor good faith attempts to resolve issues.

**RETAILATION**

125. Plaintiff has been treatened with Administrative Segregation, loss of Good-time, Investigation, for using both the Administrative Remedy Procedure.

126. Plaintiff has been also treatened with Administrative Investigation being subjected to lock down and other administrative matters for accessing the courts via the class action in the matter of Jacobson v. James LeBlanc, case number C587691, and the Court Order in Jacobson v. Marlin Gusman, in case number 09-3695-CV.

127. Plaintiff's property was siezed and he was placed in Administrative Segregation in the Hunt's Unit for nothing more than asserting his constitional rights to access the Courts.

128. The collective defendants have made every effort to intimidate, harass, interfer, and deter the Plaintiff in his litigation and threatened Plaintiff openly, pursuant to the policy and customs of the Department of Public Safety and Corrections, and Robert Henderson, Howard Prince.

<u>CAUSES   OF   ACTION</u>

<u>CONSTIUTIONAL TORTS</u>

129. At all times relevant hereto the Defendant, have acted under color of state law, deliberately, indifferently, grossly neglegent, and with the intentional disregard for the Plaintiff's safety, and access to the Courts.

**DELIBERATE INDIFFERENCE**

130. The Plaintiff incorporates by reference the same, alleging, that his rights under the United States Constiution, Amendments VIII and XIV, were violated, by the acts and omissions as said while placed in the Orleans Parish Prison, the Defendant's acted knowingly consciously, intentionally, and with deliberate indiference to inflict punishment purposely without penological justification.

**DUE PROCESS AND EQUAL PROTECTION**

131. The Plaintiff incorporates the same by reference the same, alleging, that his rights under the United States Constitution, Amendments V and XIV, were violated, his rights and immunities under Article III clause 2, United States Constitution, when the Defendant lodged the Detainers in accordance with the Interstate Agreement on Detainers Act (IAD), 18 USC App, knowing that neither Mississippi nor Lousiana were a party, however, then failing to afford the Plaintiff the protections of that Act, or his rights under the Louisiana Extradiction Act, forwarding his request for final disposition, waiver of extradiction, certified and return receipt, but instead insisited on allowing the detainers to remain lodged, forcing the Plaintiff to waive

his right to counsel, the right to arraignment, and effective access to the court by failing to provide sufficient  law library and or an alternative to the an effective law library.

### ACCESS TO THE COURTS

132. The Plaintiff incorporates by reference the same, and alleges that the Defendant denied him access to the court, a meaningfull opportunity to present his pleadings and the right to be heard, in violation of the United States Constiution Amendments I and V and XIV, by denying him sufficient writing materials, pen, paper, envelopes, and other material knowing that he is indigent, and then threating disciplinary action, solitary confinement, and significant and atypical imprisonment for access the courts.

### ACCESS TO THE COURTS

133. The Plaintiff incorporates by reference the same, and alleges that the Defendants denied him access to the courts, a meaningfully opportunity to be heard and present his cases, in violation of the United States Constiution Amendments I, V, and XIV, by denying him a sufficient law library or an alternative to the law library.

### ACCESS TO THE COURTS

134. The Plaintiff incorporates the same, and alleges that the Defendants denied him access to the courts, a meaningfully opportunity to be heard and present his grievances, in violation of the United States Constiution Amendments I, V, and XIV, by denying him a sufficient alternative to an adequate law library, implimentation of policies, procedures, and practices that knowingly prevent meaningfull access to the Courts.

### RETAILATION FOR ACCESSING THE COURTS

135. The Plaintiff incorporates the same, and alleges that the Defendants have knowingly, intentionally, deliberately and recklessly retailiated against him for accessing the courts, false accussed him without due process of assisting others, threatened him for no other just reason but the litigation pending before the courts.

### POLICIES AND CUSTOMS

136. The evidence will show that the DPSC has a long standing tradition of retailiating against those inmates that litigate against them. They have engained customs within all levels of the Administration  that demonstrate impedements and deliberate attempts to chill the rights of offenders to access the Courts.

137. The Department has historically failed to properly train its employees

to develope and persist with rewarding agents at the highest levels of the Administration.

138. The moving force behind these policies, practices, and customs has lead to the constiutional rights deprivations herein described.

GRIEVANCE POLICIES PRACTICE AND CUSTOMS

139. The Defendants have used the grievance policy, enacted customs that impede the Plaintiffs ability to access the Courts. The Defendants use the grievance procedure as a means to prevent the litigation and access to the Courts. The Plaintiffs rights under the United States Constiution Amendements I, V, and XIV have been abrogated.

DAMAGES

140. The Plaintiff was pyhiscal damaged by the placement in the Orleans Parish Prison. The Plaintiff caught staff injection which resulted in perminate scaring, the Plaintiff endured needless suffering from the lack of basic pain medication for his injuries.

141. The Plaintiff loss weight, muscle tone, and was unable to stand, walk, or regularly exercise when he was recieved into the DPSC due to the tight celling and lack of exercise.

142. The Plaintiff suffered from persistent eye and breathing ailments due to the toxic mold and atmosphere in OPP.

143. The Plaintiff suffered from sleep deprivation and hullicinations and, his mental health deteroiated.

144. The Plaintiff was suffered emotionally which resulted in the loss of community and family support.

145. The Plaintiff has become antisocial, depressed continiously, and has lost any hope for the future.

146. The Plaintiff was under continuous fear for his life and safety leading to a general mistrust of everyone. The Plaintiff will incur future mental health costs, loss of earnings, loss of wage potential, and will probley have to seek public assistance to maintain an existance as it will be tough to remain gainfully employed in any community setting.

147. The Plaintiff experiences loss of sleep and cannot rest well dreaming of the witnessed force rapes and beatings and the Plaintiff remain tramitized.

## RELIEF REQUESTED

### COMPENSATORY DAMAGES

148. The Plaintiff seeks compensatory damages beyond the jurisdictional amount of the Court to be determined by the jury.

### PUNITIVE DAMAGES

149. The Plaintiff seeks punitive dameges as determined by the jury.

### NOMINAL DAMAGES

150. The Plaintiff seeks nominal damages as determined by the jury.

### SPECIAL DAMAGES

151. The Plaintiff seeks special damages as determined by the Court.

### INJUCTIVE RELEIF

152. The Plaintiff seeks a preliminary injuction prohibiting the Defendants from subjection of significant and atyipical punishments not associate to any penelogical reasons but from activities in accessing the courts.

153. The Plaintiff seeks a preliminary injuction preventing the Defendants from enforcements of the Departmental Regulation precluding offender on offender assistance, without adequate law libraries or alternative resorces.

154. The Plaintiff seeks a preliminary injuction preventing the Defendants from enforcement of the inmate counsel policies in reference to accessing legal materials on the computers.

155. The Plaintiff seeks a preliminary injuction preventing the Department from excluding him from the law library, or setting forth reasonable times to access the law library when under court order.

156. Plaintiff seeks a preliminary injuction preventing the Department from preventing him from obtaining need legal supplies to access the court, the need being verifiable and identified.

157. The Plaintiff seeks an preliminary injuction prohibiting the Department from retailation ORDERING them to refrain from any other additional attempts to subject him to the same under the unconstitutional acts, omissions, policies, and customs as herein alleged.

158. The Plaintiff seek injuctive relief ordering the Defendants to comply with the IAD and either suggesting that if Mississippi does not extradict Plaintiff then the detainer must be dismissed as a non-party state.

159. Any and all other injuctive relief the Court deems appropriate and just.

17.

160. The Plaintiff seeks a declation which declares that the policy, procudures, customs, and practice as herein described regaring the law library are unconstiutional.

161. The Plaintiff seeks a declation which declares the law library together with the alternative source unconstiutional.

162. The Plaintiff seeks a declation which declares that his rights under the Interstate Agreement on Detaines Act, or his Due Process rights have been violated.

163. The Plaintiff seeks a declation that the condition, at OPP, that Plaintiff was confined under were in fact unconstiutional.

164. The Plaintiff seeks a declation that the procedures, lack thereof for obtaining law library time on deadlines, indigent legal supplies, and the other specified deficiecies unconstiutional.

165. The Plaintiff seeks a declation that the grievance procedure, as utlized against Plaintiff is designed to trip up the Plaintiff in accessing the Courts.

166. The Plaintiff seeks all other declatory relief that is proper and just under the circumstances as herein described.

## STATEMENT OF EXHUASTION

167. The Plaintiff asserts, hereby placing the same in the annexed exhibits, that he has exhausted all available instioutional remedies, in the Administrative Remedy Procedure, LA RS  15:1171, LAC 22 I.315.

168. The Defendants have failed to respond to the Step II replies in some of those matters in accordance with the mandated time periods.

169. The Plaintiff would suggest that the Defendant have attempt to make unavialable some of those procedures in an attempt to assert an affirmative defense of non-exhaustion pursuant to 42 USC 1997e.

170. The Plaintiff has been subjected to retailation for using that process to exhaust his remedies and will suffer immunite injuries and irrepairable harm if these matters are not timely adjudicated.

## VERIFICATION

I, David Jacobson, depose under the penalty of perjury, that I have read the herein contained, that the matters are true and correct to the best of my knowledge, information, and belief, except as to those statements made upon information, I beleive that they are true,

signed under the penalty of perjury.

_David Jacobson_

Respectfully, submitted this _16_ day of April, 2010.

David Jacobson #559809
Phelhs Correctional Center
Post Office Box 1056
DeQuincy, LA 70633

## DEFENDANTS ADDRESSES

James LeBlanc
Secretary Lousiana Department
of Public Safety and Corrections
Post Office Box 94304
Baton Rouge, LA 70804


Louisiana Department of Public
Safety and Corrections
(same)


Howard Prince
Post Office Box 174
St. Gaberial, Louisana 70776

Laterda Drummond
Post Office Box 174
St. Gaberial, LA 70776

Robert Henderson
Post Office Box 1056
DeQuincy, LA 70633

David Jacobson #558909
C.Paul Phelhs Correctional Center
Post Office Box 1056
DeQuincy, LA 70633

Louisiana Department of
Public Safety and Corrections
Post Office Box 94304
Baton Rouge, La

## ADMINISTRATIVE REMEDY PROCEDURE

RE: Step II ARDC 2009-254

Authority: LA RS Ann 15 §1171 et seq
            42 USC 1997 (e)(a)

On or February 08, 2010, the grievant recieved the herein attached
Step I response which does not adequately address the situation and,
factually errs in the conclusion that the claimant has not suffered
prejudice therein.

### Historical Facts

1. Claimant arrived in the LA DPS &C , HRDC on October 27, 2009,
an adjudicate defendat from ORLEANS PARISH, arriving from the sending
institution the Orleans Parish Prison (OPP).

2. The claimant's transfer resulted from a civil rights complaint
filed contending that the law library access recieving was inadequate,
that the conditions that the claimant was subjected to violated the
constitution, that the medical treatment was deficient, inter alia.
The case arrived at the United States Disctict Court, Eastern District
of Louisiana in the case of 09-3695 .

3. Upon arrival at HRDC, claimant was taken to the Administrative
Segragation Unit in the Bearvers , were his personal property was sieezed
including his pencil, pens, and writting paper. That resulted in the
claimant filing Administrative Remedy Procedure 2009-249 ARDC.

4. Claimant informed staff of the pending court hearing that was
scheduled for November 06, 2009. Sgt. Holliday loaned the claimant
a pencil for twenty minutes and, claimant drafted an ARP and request
for writting materials.

5. On or about November 03, 2009, Mr. Waits tendered the claimant
writting materials and, requested to utlize the law library. Upon belief
the claimant was informed that inmate legal assistants visited the blocks
periodically and, that I should request services then.

6. The claimant was unable to submit a reply to the hearing date
for November 06, 2009, and or request a continuance. Incidently, the
lack of the appearance or timely notice of unavailablty lead to a fee
dispute with counsel of record, in part because the hearing had twice
been cancelled.

7. Phone access is also denied inmate arriving into the institution
for seven days and the claimant was unable to contact counsel this way.

8. The claimant did not have writting material to write the Deputy
Warden to request legal aid in accordance with the protocal, until November
03, 2009.

9. The Department admits that it did not tender writting materials
until November 03, 2009, that it placed me in Administrative Segregation,
that offender property is taken, and that law library access is not
afforded persons in HRDC.

10. The claimant did not see inmate clerks while confined in the
Beavers at Hunt's.

11. The claimant suggests that it is unreasonable for the Department

to provide meaningful assistance to inmates who do not know the want
and the specific citation required to obtain that information.

12. The claimant could not know the specific citation for the West Practice Digest system, Shepard Citators , and the case law that was need to defend the traverse in the November hearing.

13. Consequently, the inmate legal clerks are not trained paralegals and are not required to do advance research.

14. The Departmental policy prohibits inmate assistance other than those approved for the law library.

15. The law library access at PCC has also been deficient in the following ways:

> A. Shepards Citators is not functioning properly and does not provide parallell references, case histories, overuled cases, and the citations it does provide are not accessible from the system in use.

> B. The Key Citation system used with LEXIS is not functioning, the library has no West Practice Digests that are current.

> C. The specific citation system is not practible, indigent offenders must pay for case law to access the information and monies are debted against the account.

> D. The trade makers are deleted from the materials and the formates that offender purchase are changed to same ink, and paper to the disadvantage of the user.

> E. The Clerks are not trained as paralegals and do not provide a proper alternative to the remote control access.

> F. There are no protocals, promulgations, for users to obtain additional time for Court Ordered Deadlines.

> G. The system whereby the user must forward a number, case name, or other information in advance is inefficient.

> H. There are no treaties or secondary resources.

> I. Copies are read by staff before copies are made.

> J. Staff read the prepared legal pleading, pleading being typed, and are attempting to chill offender access to the court under the treats of good time loss, or cell block sanctions.

The claimant suggests that these are specific impediments that are clearly prejudical to his causes of actions.

## Prejudice

16. Showing an impediment is one thing however, showing "prejudice" is altogether different. In this respect the claimant suggests the following is sufficient prejudice:

> A. In case number 2009-0895, as previously mentioned, the claimant missed a deadline and, a fee dispute ensued.

> B. The claimant had to file a malpractice suit in an attempt to reclaim a portion of his proceeds.

> C. The claimant has been unable to complete his supplemental brief on appeal to the Fourt Circuit Court of Appeals in case number 487705. The lack of Shepards is making the research almost impossible and time consuming.

> D. The claimant has several pleading returned from the Clerks of the Court, improperly filed in particular the case in the 19th Judical Circuit Court Orleans Parish Inmates v. State of Louisiana.

> E. In the malpractice suit, case no 2010-89 Orleans Civil District Court, the entire complaint was returned and had

to be refiled.

F. In case number 09-3695, the claimant submitted several improper and incomplete pleading that resulted in disfavor in the Court eyes.

G. Additionally, as a result of some of the pleading errors the Defendants in case number 2009-0895 plead lis pendens.

H. Claimant was unable to effective traverse the lis pendens contentions because he was given improper information.

I. The Defendants also noted that the Plaintiff (claimant) should have appealed instead of filing an additional action which as a direct and proximate cause of the law library access.

J. The claimant was incurred several delays in filing discover in the case of 09-3695 and, is currently under court ordered deadlines and, is having problems meeting the same because of the information systems herein described.

K. The claimant is having troublems obtaining the supplies to complete the second set of interrogatories, admissions, and production of documents in case numbers 2009-0895, 09-3695, and 2010-80.

L. Due to the lack of supplies to keep the following suits active, the claimant has been delayed in his suit against G&D Towing Company which was severed from 09-3695.

M. The claimant is not being allotted additional time to utlize the law library or, has had to engage a procedure whereby the Warden assistant must approve the matter. There is no clear promulgations.

## OVERVIEW

17. The claimant suggests that the policy directive be charged and promulgated Departmental wide pursuant to the Administrative Procedure Act LA R.S. Ann 49 §950.

18. The practice currently in effect are vague, give staff discreation in access to the Court issues, and do not specify when and, if legal supplies shall be granted. The claimant has a demonstrated need for both access and supplies.

19. The practices currently in effect do not mandate when and now additional law library time is obtained and, under what circumstances it is allotted.

20. The promulgations do not set forth the minumum collection needs of the law library, what programs must be operational to ensure meaningfull access for sufficient pleading submission. Secondary sources have been omitted from the librarys, are not current, and the specifii citation system should be supplemented with other means like trained clerks.

21. The specific citation systems, staff reading and coping legal materials, has a chilling effect on the access to the courts. The like analogy is applied to reading incoming and outgoing legal mail.

22. Administators are able to place whatever offender in the clerks position without objective creteria's being meet.

## RELIEF REQUESTED

22. An offical Departmental Policy enacted pursuant to the Admistrative Remedy Procedure Act to address these circumstances.

23. Claimant requests that Shepard Citators and Key Note Systems be corrected on the operational systems in the law library at PCC.

24. An interm promulgation should be imposed in the interm.

Ex R

David Jacobson
3000 Perdido
New Orleans, LA 70119

ADMINISTRATIVE PROCEDURE REMEDY

To: Louisiana Department of          To: Louisiana Attorney General's Office
Public Safety and Corrections        Usury, Weeks, and Matters

Authority: RA 15:1171

INCARCERATION AT THE ORLEANS PARISH PRISON IS
UNCONSTITUTIONAL BECAUSE THE CONDITIONS, UNDER
THE TOTALITY OF CIRCUMSTANCES, POSE A SUBSTANTIAL
RISK OF SERIOUS PHYSICAL HARM, THE SHERIFFS DEPARTMENT
KNOWS OF THIS RISK AND DISREGARDS THE EXCESSIVE
RISK INSTEAD MAINTAINING A CONSISTENT PRACTICE
THAT HAS BECOME THE POLICY OF THE MUNICIPALITY-
TO BE DELIBERATE INDIFFERENT TO THE WELFARE
OF DETAINEES.

1. SINCE HURRICAN KATRINA THE SHERIFFS DEPARTMENT HAS BEEN
UNDERSTAFFED, UNDER FUNDED, OPERATING TEMPORARY HOUSING UNITS,
USING TEMPORARY TRAILERS FOR MEDICAL CARE, AND USE OUTDATED
FACILITIES TO HOUSE PRETRIAL - CONVICTED DETAINEES ALIKE.

Ex R 11

2. THE SHERIFF IS KNOWINGLY OPERATING THESE FACILITIES BEYOND CAPACITY WHICH IS OBVIOUS BY DAILY COUNT SHEETS AND REFLECTIONS OF BED CAPACITIES.

3. TO HIDE AND CONCEAL THESE ISSUES FROM DISCOVERY, DURING INSPECTIONS, DETAINEES ARE SCHUFFLED FROM ONE INSTITUTION TO ANOTHER, HOWEVER, THE CAPACITY ISSUE PERSISTS.

4. FOR EXAMPLE, DURING THE JULY INSPECTION OF CONCHETTA, DETAINEES WERE 12 DEEP ON THE FLOORS IN THE UNITS, BUT THE DAY BEFORE INSPECTION MOVED TO THE TEMPLEMEN(S) - TENTS INTER ALIA - OLD PARISH.

5. AS THE JAIL POPULATION GROWS MORE OVERCROWDED THE ACTS OF INMATE ASSAULTS ALSO GROW. THOUGHT SOME OF THE ASSAULTS GO UNREPORTED THE SHERIFFS DEPARTMENT, MARLIN GUSMAN HAS IMPUTED KNOWLEDGE, HAS KNOWLEDGE OF THE RISK OF SERIOUS HARM THE OVERCROWDED CONDITIONS PRESENT.

6. THE KNOWLEGE OF MUNICIPAL EMPLOYESS, OF THE RISK, IS OBVIOUS DUE TO THE INCREASE OF INMATES "CHECKING OFF" (SEEING OR REQUESTING PROTECTIVE CUSTODY) THE TIERS THROUGHOUT THE ORLEANS PARISH PRISON.

7. DESPITE THE RISK, AND KNOWLEDGE, A WIDE SPREAD PRACTICE OF FAILING TO TAKE CORRECTIVE ACTION EXIST THE LONGSTANDING TRADITION IS SO EMBRACED BY HIGHER DEPARTMENTAL OFFICALS AND RANKING SHERIFFS DEPTIES THAT A CUSTOM EXISTS IN ELECTING TO MAINTAIN A SAFE ENVIRONMENT.

EX R VII

8. AS A DIRECT AND PROXIMATE CAUSE OF FAILING TO PROVIDE A
IN HABITABLE ENVIROMENT - TERROR REIGNS - INMATES MUST
ARM THEMSELVES OR FACE A PRESENT AND INEVITABLE
RISK TO BE STABBED.

9. AN INMATE, AS IS COMMON KNOWLEDGE AMONG ALL, HAS NO
CHANCE OF SURVIVING WITHOUT SERIOUS RISK OF HARM, WITHOUT
ARMING HIMSELF.

10. IMPUTE KNOWLEDGE IS OBVIOUS DUE TO THE NUMEROUS STABBINGS
IN THE PARISH PRISON. MOREOVER, THE PRACTICE OF OVER POPULATION
DIRECTLY CORRESPONDES TO THE INCREASED NUMBER OF STABBINGS
AND ASSAULTS.

11. THE CONSISTENT RISK OF SERIOUS HARM, IN AN UNCONTROLLABLE
ENVIROMENT LEADS TO THE SEXUAL ASSAULTS OF INMATES, ASSAULTS
ATTACKS, AND THEFTS    UNARMED INMATES, AND LEADS TO
PSYCHOLOGICAL TERROR.

12. THE PSYCHOLOGICAL IMPACT CANNOT BE DISPUTED. THE PARISH
PRISON HAS THE HIGHEST RATES OF SEXUAL ASSAULTS, STABBINGS,
ASSAULTS, SUICIDE OR ATTEMPTS, THAN ANY OTHER PARISH IN THE
STATE PER CAPITA.

13. THESE CONDITIONS MAKE "BAD MEN" WORSE AND EMPRICAL
EVIDENCE WILL SUGGEST LEAD TO VIOLANT CRIMES. THE
MUNICIPALITY SANCTIONS THE DE FACTO PRACTICES BY THEIR
ATTRIBUTES AND ATTITUDES.

14 THE SHERIFFS DEPARTMENT IS CRIPPLED IN INVESTIGATIVE
[illegible] AND FAILING TO TAKE CORRECTIVE ACTION, AS SHERIFF
CUSTOMERS ATTITUDE IS PRISONERS ARE TAKING "AIR" FROM

Ex R IV

15. DETAINEE AT ALL INSTITUTIONS IN THE PARISH PRISON ARE AFFORD LESS THAN TWENTY-ONE (21) SQUARE FEET PER INMATE/DETAINEE INCLUDING BATHROOM-SHOWERS - AND EATING AREA'S.

16. THE LONG EXPOSURE TO TIGHT CEILING CEILING, TOGETHER WITH THE OBJECTIVE UNREASONABLE UNSAFE ENVIROMENT MAKES ALL OTHER CONSTITUTIONALLY QUESTIONABLE PRACTICE, WHICH IN ISOLATION MAY BE CHACTERIZED A DE MINUS, PARTICULAR EGERIOUS BECAUSE INMATE/DETAINEES ARE ALREADY PSYCHOLOGICALLY VALNERABLE.

17. CLEANING SUPPLIES TO DISINFECT THE PARISH PRISON ARE BEING PURPOSEFULLY WITHELD BECAUSE OF MONATARY BUDGET PROBLEMS. THE "DOCKS" GOING TO COURT ARE ALWAYS TIGHT CEILED AND UNSANITARY

18. DETAINEES ARE ALLOTTED LESS THAN 15 HOURS OF OUTDOOR EXCERCISE PER WEEK.

19. EVERY HOUSING UNIT AT THE PARISH PRISON, ACCORDING TO DESIGN CAPACITY, IS DOUBLE OR TRIPLED.

20. DUE TO OVER DESIGNED CAPACITY ISSUES THE PLUMBING FAILS LEADING TO PING-PONG TOILETING OR OVERFLOW OF HUMAN WASTE. THE PROBLEMS ARE PARTICULARLY PERSISTENT IN THE OLD PARISH AND THE HOUSE OF DETENTION.

21. PLUMBING, SINK, TOILET FAILURES ARE CONSTITENT AND TO CESULAR MOST HOUSING UNITS HAVE INOPERABLE UNITS.

22. NOISE LEVELS ARE CONSTETENTLY HIGH AT ALL TIMES, DAY, NIGHT BECAUSE OF DOUBLE/TRIPLE CAPACITY. DETAINEES COMMONLY FEAR HOME MADE EAR PLUGS TO DEAL WITH THIS

Ex R V

23. CLOTHING, OTHER THAN ORANGE JUMPSUITS, IS NOT PROVIDED. DETAINEES RECIEVE NO MATTRESS COVERS, NO PILLOWS, NO UNDER GARMETS.

24. NO LAUNDRY SERVICE, OTHER THAN FOR JUMP SUITS, IS PROVIDED. DETAINEES ARE FORCED TO USE THEIR INDIGENT SOAP - ONE HALF BAR PER WEEK - TO BATH AND DO PERSONAL LAUNDRY.

25. DETAINEES ARE SUBJECT TO DISCIPLINE, LOSS OF TIME, FOR CLOTHES LINE, DESPITE FORCED LAUNDRY.

26. BECAUSE OF OVER CAPACITY ISSUES, LACK OF SUFFICIENT CLEANING SUPPLIES, LACK OF LAUNDRY SERVICE, PEST CONTROL IS INEFFECTIV NEGATED OR INADEQUATE.

27. THE PARISH PRISON IS UNDER STAFFED, A DEATH TRAP IN CASE OF FIRE. HOUSING LOCATIONS ARE ABSENT SPRINKLER SYSTEMS.

28. FIRE ESCAPE ROUTES ARE NOT POSTED NOR PRACTICED AND IN CASE OF FIRE NO ONE WOULD KNOW HOW TO PROCEED.

29. INDIGENT SUPPLIES ARE NOT DISPENSED IN SUFFICENT QUANITY TO MAINTAIN HYGEINE. DETAINEES RECIEVE ONE HALF BAR OF SOAP, .35 0% OF TOOTHPASTE, NO SHAMPOO OR UNDER ARM DEORDANT.

30. DETAINEES ARE NOT AFFORDED POSTAGE FOR OUTSIDE COMMUNICATION, OTHER THAN FOR LEGAL MAIL, AND PROVIDE NO MEANS OF EMPLOYMENT.

31. DETAINEES ARE CUT-OFF FROM THE OUTSIDE WORLD, IF INDIGENT WITH NO WAY TO MAINTAIN FAMILY CONTACT.

32. DETAINEES ARE NOT PROVIDE 2000 CALORIES PER DAY AND ARE NOT PROVIDE MINIMUM NUTRION FOR BASIC SURVIVAL.

33. DETAINEES FEED DETAINEE FROM CAFETERIAS PROVING TO BE UNSANITARY AND LEADING TO FOOD POISING.

Ex R VI

34. DUE TO OVER CAPACITY ISSUES, OR DESIGN IN GENERAL, THE PARISH PRISON AND FACILITIES THEREIN HAVE IMPROPER VENTILATION. THE HOUSING UNITS ARE PARTIALLY VENTILATED WITH FANS. THERE EXISTS NO EXHAUST VENTILATION.

35. ACCESS TO COURTS BY MEANS OF THE LAW LIBRARY OR LEGAL ADVISORY SYSTEM PRODUCES INEFFECTIVE PLEADINGS OR REJECTION THEREOF.

36. THE CENSORSHIP OF OUTGOING LEGAL MAIL IS UNCONSTITUTIONAL AND THE SPECIFIC CASE CITATION SYSTEM FOR OBTAINING MATERIAL, AND LACK OF MINIMUM MATERIALS, IS ALSO UNCONSTITUTIONAL.

## RELIEF REQUESTED

37. I REQUESTFULLY REQUEST THE DEPARTMENT OF CORRECTIONS TAKE NOTICE OF THESE CONDITIONS AS APPLIED TO STATE INMATES.

38. THE DEPARTMENT SHOULD RECONSIDER THE POLICY OR CONTRACT WITH THE ORLEANS PARISH PRISON.

39. THE DEPARTMENT SHOULD DECLARE THE CONDITIONS IN THE ORLEANS PARISH PRISON UNCONSTITUTIONAL WITH RESPECT TO STATE INMATES.

40. THE DEPARTMENT SHOULD IMMEDIATELY TRANSFER CLAIMANT INTO CUSTODY OF THE DEPARTMENT OF CORRECTIONS IN AN INSTITUTION OF ITS DISCRETION.

41. DEPARTMENT SHOULD CONSIDER CLAIMANT HAVING EXHAUSTED AVAILABLE REMEDY PRESENTING AN ISSUE OF IMMINENT DANGER.

RESPECTFULLY

Ex S

DAVID JACOBSON
3000 PERDIDO CTA 2-2
NEW ORLEANS, LA 70119

CERTIFICATE OF SERVICE

STATE OF LOUISIANA  }
                    } SS
PARISH OF ORLEANS   }

I, DAVID JACOBSON DEPOSE AND SAY THAT ON THIS 26
DAY OF SEPTEMBER, 2009, THAT I HAVE SERVED
UPON:

THE LOUISIANA DEPT. PUBLIC SAFETY AND CORRECTIONS
MARLIN N. GUSMAN, SHERIFF
LOUISIANA ATTORNEY GENERALS OFFICES

A TRUE AND CORRECT COPY OF THE STEP II ADMINISTRATIVE
REMEDY PROCEDURE (ARP), BY DEPOSITING THE SAME
IN THE UNITED STATES MAIL, FIRST CLASS POSTAGE
PRE PAID

DAVID JACOBSON

Ex § II

DAVID JACOBSON
3000 PERDIDO CTA
NEW ORLEANS, LA 70119

### CERTIFICATE OF SERVICE

STATE OF LOUISIANA } ss.
PARISH OF ORLEANS

I, DAVID JACOBSON DEPOSE AND SAY THAT ON THIS 06 DAY OF
AUGUST _____, 20 09, THAT I HAVE SERVED UPON:

THE LOUISIANA DEPARTMENT OF
SAFETY AND CORRECTIONS
MARLIN GUSMAN, SHERIFF
USURV, WEEKS, AND MATHEW
LOUISIANA ATTORNEY GENERAL,

A TRUE AND CORRECT COPY OF THE ADMINISTRATIVE PROCEDURE
REMEDY SEEKING INJUCTIVE AND DECLATORV RELIEF FOR CONDITIONS
OF CONFINEMENT AT THE ORLEANS PARISH PRISON.

DAVID JACOBSON

BOBBY JINDAL
Governor

JAMES M. Le BLANC
Secretary

# State of Louisiana
### Department of Public Safety and Corrections
### C. Paul Phelps Correctional Center

MEMORANDUM

TO:     David Jacobson #558909
        PCC H-8

FROM:   Delanie Burgess
        Corrections Specialist, PCC

DATE:   March 8, 2010

SUBJECT:  Letter concerning Outstanding Detainers

I have read your letter and noted your concerns. I can not help you with any legal work unless it pertains to PCC. You might can write to the Records office here at PCC and see if they can help you, but there is nothing that I can do.

db

cc:     Law Library

14925 Highway 27 (Post Office Box 1056), DeQuincy, Louisiana 70633 • (337) 786-7963 • Fax (337) 786-4524
www.doc.la.gov
An Equal Opportunity Employer

To: David Jacobson, #558909          H-8-46

From: Records Office (J. Johnson)

Date: January 6, 2010

I have spoken with the authorities in Mississippi regarding your detainer.
It is still active. It is yours or Mississippi's responsibility to file the
proper paperwork to have you extradited during your incarceration to
answer for pending charges. Otherwise Mississippi may wait until you
have satisfied the current charges. The information you need to move
forward on this can be found in the law library. You need to inform the
District Attorney in Jackson County of your whereabouts and that you
would like to have this detainer resolved. I cannot intervene. You have
been provided a copy of your master prison record which includes your
release dates and your whereabouts.

To: David Jacobson, #558909        H-8-46

From: Records Office
      Mrs. Johnson

Date: March 15, 2010

I have already addressed this issue letting you know what you need to do.
I cannot intervene and I will not contact Mississippi demanding anything.
You already have the information needed to file the paperwork with
Mississippi. You need to contact the Jackson County District Attorney's
office requesting resolution of this detainer, either by a speedy trial
motion or an application for requisition.

Date: January 6, 2010

I have spoken with the authorities in Mississippi regarding your detainer. It is still active. It is yours or Mississippi's responsibility to file the proper paperwork to have you extradited during your incarceration to answer for pending charges. Otherwise Mississippi may wait until you have satisfied the current charges. The information you need to move forward on this can be found in the law library. You need to inform the District Attorney in Jackson County of your whereabouts and that you would like to have this detainer resolved. I cannot intervene. You have been provided a copy of your master prison record which includes your release dates and your whereabouts.

## INSTITUTIONAL STATEMENT

I hereby certify that _David Trosson_ # _553107_, has the following sums of money on account to his credit to the C. Paul Phelps Correctional Center which is a unit of the Depatment of Public Safety and Corrections, for the State of Louisiana, where he is confined:

Prison Drawing Account: _____ 0 _____

Prison Savings Account: _____ 0 _____

a. Cash: _____ 0 _____            b. Bonds: _____ 0

_____

I further certify that Petitioner likewise has the following securities to his credit according to records of said institution: (if none, please specify) _____

_____

_____

_____

_1-5-10_                                      _D. Avey_
**DATE**                                      **AUTHORIZED OFFICER OF P.C.C.**


_Acct Tech_
**TITLE OF ABOVE OFFICER**

*********************************************************************************

### ORDER

IT IS HEREBY ORDERED, that _____, (Shall) (Shall not) be permitted to proceed in Forma Pauperis without the prepayment of _____ to cover the costs or partial cost of this action.

IT IS FURTHER ORDERED, that the above OFFICER on said institution deposit with this Court the sum of _____ from Petitioner's account at said institution as advance costs and all actions, including the service of process, which is hereby stayed pending reciept of same.

SAID and DONE this _____ day of _____ 20_____ .

_____
**JUDGE**

## INSTITUTIONAL STATEMENT

I hereby certify that _David Thompson_ # _559107_, has the following sums of money on account to his credit to the C. Paul Phelps Correctional Center which is a unit of the Depatment of Public Safety and Corrections, for the State of Louisiana, where he is confined:

Prison Drawing Account: _____ *0* _____

Prison Savings Account: _____ *0* _____

a. Cash: _____ *0* _____                    b. Bonds: _____

I further certify that Petitioner likewise has the following securities to his credit according to records of said institution: (if none, please specify) _____

_____

_____

_____

_____ *1-5-10* _____                    _____ *D. Ivey* _____
**DATE**                                **AUTHORIZED OFFICER OF P.C.C.**

_____ *Acct Tech* _____
**TITLE OF ABOVE OFFICER**

*****************************************************************************************

### ORDER

IT IS HEREBY ORDERED, that _____, (Shall) (Shall not) be permitted to proceed in Forma Pauperis without the prepayment of _____ to cover the costs or partial cost of this action.

IT IS FURTHER ORDERED, that the above OFFICER on said institution deposit with this Court the sum of _____ from Petitioner's account at said institution as advance costs and all actions, including the service of process, which is hereby stayed pending reciept of same.

SAID and DONE this _____ day of _____ 20_____ .

_____
**JUDGE**

*ORIGINAL*

CASE NUMBER: ARDC-2009-249

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: <u>JACOBSON, DAVID 558909</u>

B1A
Living Quarters

Response to request dated 11/06/2009, received in this office on 10/28/2009

Offender David Jacobson was received into HRDC from Orleans Parish Prison on 10/27/2009. His complaint regarding not have access to writing material was accepted on 11/06/2009. A review with the Unit 3 Classification Officer Mr. Waits reveals the subject received writing materials on 11/3/2009, 11/10/2009, and 11/17/2009.
The subject's complaints are false and without merit.
Abuse of the ARP system may result in disciplinary action.
Request Denied.

attachments.

Prepared by: _John L. McGovern III_
John L. McGovern III
EHCC Classification Director

_12/9/09_
Date

_Ken August_
Unit Head

<u>Instructions to Inmate:</u>  If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

( )  I am not satisfied with this response and wish to proceed to Step Two.

Reason:

_____
_____
_____
_____

_____          _____
Date                                        Inmate's Signature    DOC#

David Jacobson
No: 558909
C.Phelph Correctional Center

RE: ARDC 2009-249         **Administrative Remedy Appeal**

Authority: LA RS 15:1171 et seq.,

## Factual Predicate

On or about October 27, 2009, the claimant was moved from the Orleans Parish Prison to the Elyan Hunt Correctional Center, at the HRDC. Upon arrival the claimant was placed in the Beavers in Administrative Segregation. There was no hearing afforded the claimant, no opportunity to be heard, and according to the practice and custom of that institution the claimant was stripped of his ink pen and property. Incidentally, the claimant complainted to an "unknown" Lt. and he was allowed to keep his legal work.

The claimant spoke with Sgt. Holiday in reference to the inability to write and he offered the claimant a pencil. He indicated that offenders in this housing unit were not allowed ink pen's and that he would only have a pencil during his tenure in the Beavers. Ask when the claimant was there Sgt. Holiday could only inform that claimant was a "holdover".

On or about November 06, 2009, the claimant had a court ordered hearing in his civil matter (claims that resulted in the transfer to the Department of Corrections verses incarceration at the Orleans Parish Prison) and, upon arrival this fact was known, or should have been known, by the department. The facts presented established that the claimant informed the department of the same said upon enterance of administrative segregation. Notwithstanding the claimant, as determined by the department, was denied writting material until November 06, 2009, well after the Court deadline that had to be rescheduled (See attachement A).

Consequently, the claimant had no way to contact counsel who was presented at the hearing and who subsequently withdrew from representation after being paid $3000.00. The claimant was hide for the first hearing in Orleans Parish Prison by the defendants (Orleans Parish Sheriff's Department and it is highly likely they transferred the claimant to abate the presence at the November 06, 2009 hearing). The fee matter is before the Louisiana Attorney Disciplinary Board (See attachment B).

Consequently, in conclusion the examiner John L. McGovern III indicates that the matter is without merit, that the claimant recieved writting materials on 10/27/2009 **after the hearing was already conducted in this matter and then threats to bring disciplinary action for the departments failure to ensure proper access to the courts.**

The claimant indicates the decision is in error and he his entitled to redness of the grievance.

Respectfully,

David O. Jacobson

Dated:  December 29, 2009

*ORIGINAL*

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
OFFENDERS RELIEF REQUEST FORM

CASE NUMBER: ARDC-2009 -254

TO: <u>DAVID JACOBSON 558909</u>              <u>PCC</u>
      Offender's Name and Number              Living Quarters


      <u>09/21/2009</u>
      Date of Incident


X              ACCEPTED:  This request comes to you from the Wardens Office.  A response will be
               issued within 40 days of this date.

               REJECTED:  Your request has been  rejected for the following reason(s):


<u>      09/21/2009      </u>              <u>              Laurita Woods              </u>
            Date                        Warden's Signature or Designee

**BOBBY JINDAL**
Governor

**JAMES M. Le BLANC**
Secretary

## State of Louisiana
### Department of Public Safety and Corrections
### C. Paul Phelps Correctional Center

MEMORANDUM

TO:    David Jacobson #558909
              PCC H-8

FROM:  Robert Y. Henderson
            Warden, PCC

DATE:   April 6, 2010

SUBJECT:  Memorandum to Corrections Specialist Delanie Burgess

Having carefully read the documents you submitted, I noted that District Judge O'Neil of Beauregard Parish of Louisiana signed an order which states, "Defendant may agree to voluntarily extradition" and that as the detainer is from the State of Mississippi, the court has no jurisdiction.

You have already been advised that PCC is not going to demand anything of the Mississippi Authorities. You need to contact the Mississippi Authorities – Jackson County District Attorney – requesting resolution of the concern you have expressed.

The State of Mississippi filed the detainer – not PCC – PCC merely accepted the detainer and noted it in your Master Prison Record.

PCC has no objection to your extradition, and in fact, no opinion regarding the extradition.

As I read article III, it is your responsibility to "he (the prisoner) shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers jurisdiction written notice of the place of imprisonment and his request for a final disposition."

In closing, I have been reading letters from other offenders which lead me to believe you are offering legal advice. If you continue to do this, there will be an investigation which could result in your being placed in Lockdown.

P.S. Neither Louisiana nor Mississippi are part of the Interstate Compact on Detainers. This is just for your information.

RYH:db

14925 Highway 27 (Post Office Box 1056), DeQuincy, Louisiana 70633 • (337) 786-7963 • Fax (337) 786-4524
www.doc.la.gov
An Equal Opportunity Employer

David Jacobson #558909
Phelphs Correctional Center
Post Office Box 1056
DeQuincy, LA 70633

April 12, 2010

Risk Management
Louisiana Department of
Public Safety and Corrections
Post Office Box 94304
Baton Rouge, LA 70804

RE: Ongoing Circumstances at Phelhs

I hope that this communication finds you well. Recently there has been several issues regarding litigation between Warden Henderson and myself and, now the circumstances are such that he is attempting to lock me up in the cell block because he is assuming that I am giving legal advise.

My contention is that these actions are nothing more then retailation for accessing the courts and questioning his administration in the mannorism in which he has handled the detainer issues against me.

Enclosed in the recently recieved memorandum that addressed the issues. It seems that there are no real way to resolve matters with the administration. The warden indicates that neither Louisiana nor Mississippi are party states to the Interstate Agreement on Detainers Act (IAD), I readily understand this and specifically plead this in Beaugard Parish. My point is that if these are not party states then the detainer cannot be valid. To the extent that the detainer might be valid, lodging the same, requires the State of Louisiana to comply with the provisions of the IAD or at least the provisions of state law that afford a detainee an extradiction hearing.

In either case a "demand for final disposition" is required under the statutory language of the IAD. The demand letter is an informal term used in the statute and should have not been construed as I was demanding the Administration to take this is that action.

In any event I have been placed in reasonably apprehension of fear by this administration and envision the time that I will be carted to the cell block on the whim and caprious of the Warden. I have advise no one in any legal matters so to speak within the prespective of this communication. I cannot comtrol what other offenders might do.

Could we please resolve this matter some why.

Thank you in advance.

Respecfully,

David Jacobson

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: Jacobson, David 558909

H8
Living Quarters

Response to request dated 1/10/10, received in this office on 01/11/2010

The Administrative Remedy Procedure dated January 10, 2010, was received and noted.

As indicated in the 1st paragraph of your request, the ARP is against the conditions of confinement you were held under at the Orleans Parish Prison. You arrived at Phelps Correctional Center on 11/23/2009. C. Paul Phelps Correctional Center and its staff had no control, responsibility, or involvement in your confinement prior to the date of 11/23/09.

The 2nd paragraph of your ARP concerns (Attachment B) which state is an order from the USDC indicating your must exhaust these ARP remedies before filing suit pursuant to 42 USC 1983.

Your 3rd paragraph concerns what you state is (Attachment C) a court order regarding a hearing in an unrelated matter together regarding access to the courts upon being shipped from OPP to HRDC where you were placed in Administrative Segregation, denied paper, pen, and mailing supplies. You state this describes overall access to the court problems while confined in the Department of Corrections Case since your sentence date.

Attachment C does not appear to refer specifically to C. Paul Phelps Correctional Center. Since your assignment to PCC on 11/23/09, you have not been in lockdown, you have resided in general population, with access to the offender Law Library and resources which have been deemed adequate by ACA audits, Headquarters' audits, and review by DOC Legal Staff. In addition the ARP you filed gives evidence in and of itself of your ability and capability to file a lawsuit, make legal documents, and have access to paper to make copies. Your record reflects you claim to be a paralegal. There is no indication that anything at PCC has hindered your contact with the court.

Your 4th paragraph in your ARP claims (Attachment D) that the DOJ Investigation concluded you were subjected to unconstitutional conditions. Again, this refers to matters prior to 11/23/09, the date you arrived at PCC.

Your 5th paragraph in your ARP refers to your claim that (Attachment E) is the operations review of OPP as determined by DOJ. Again, this refers to matters prior to 11/23/09, the date you arrived at C. Paul Phelps Correctional Center.

Your 6th paragraph indicates you seek injunctive relief prohibiting the department from ever confining you or "person" under their jurisdiction to the OPP without exclusive authority from the Legislature.

In answer to this paragraph, C. Paul Phelps Correctional Center does not have the legal authority to provide injunctive relief – a power reserved by the State Legislature to the courts.

Your 7th paragraph states you seek injunctive relief forever prohibiting the department from detaining you or releasing you to the Orleans Parish Sheriffs Department. Again, injunctive relief is not something that PCC can grant – only the courts can grant this. This paragraph has a request which seem as overly broad in its possibilities as to preclude such relief – "forever" is a long time.

Your 8th paragraph seeks a declaration, but does not indicate that C. Paul Phelps Correctional Center has violated your rights or caused emotional or mental distress. For that reason I would deny and reject any claims for compensation for damages or for future counseling and cost for care or for lack of treatment for medical needs or any other relief. You do not show that C. Paul Phelps Correctional Center has caused any of your concerns.

While I do not consider our legal resources limited, if there is something not available please write the Warden.

Prepared by: _Delanie Burgess_

Date _1/18/2010_                    _Richard Stender_
                                              Unit Head

Instructions to Inmate: If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

(✓) I am not satisfied with this response and wish to proceed to Step Two.

Reason: _SEE ATTACHED_

_1-24-10_
Date                    Inmate's Signature    DOC#

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES

CASE NUMBER: ARDC-2009-249

SECOND STEP RESPONSE FORM
(HEADQUARTERS)

TO: JACOBSON, DAVID   558909                          PCC
       Inmate Name and Number                          Living Unit

Response to Request Dated 12/29/09, Received in this Office on 02/08/10:

Your request for an Administrative review of ARP # ARDC-2009-249 has been received.   A Corrections
Specialist of the Headquarters staff has reviewed your request in order to render a fair and impartial
response.

We accept staff's position on the matter and can add nothing to make the issue any clearer.   It has been
determined, that your request was adequately addressed at the first step.   Therefore, the first step
response prepared by the staff has been determined to be clear and concise and has thoroughly
addressed your issues.   There is no reason for Administrative Intervention.

Your request for relief is denied.

_____3/12/10_____                              _Linda Ramsey_____
              Date                                  Secretary's Signature or His Designee

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
OFFENDERS RELIEF REQUEST FORM

CASE NUMBER: PCC-2010 -0039

TO:   <u>David Jacobson 558909</u>          <u>H8</u>
      Offender's Name and Number          Living Quarters


      <u>March 2009 - October 2009</u>
      Date of Incident


X                   ACCEPTED:  This request comes to you from the Wardens Office.  A response
                    will be issued within 40 days of this date.

                    REJECTED:  Your request has been  rejected for the following reason(s):



_____<u>01/15/2010</u>_____          _____
          Date                              Delanie Burgess
                                      Warden's Signature or Designee



$ 05.00°
02 1M
0004-270490  APR 13 2010
MAILED FROM ZIP CODE 70833

CYNTHIA CORRECTIONAL CENTER
POST OFFICE BOX 1056
DEQUINCY LA 70633

CLERK OF COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT LOUISIANA
113 US COURTHOUSE
707 FLORIDA STREET
BATON ROUGE, LA 70801-1713

SCREENED
OK
U.S. MARSHAL

LEGAL MAIL