UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DAVID JACOBSON  (#558909)

VERSUS                                                              CIVIL ACTION

JAMES LEBLANC, ET AL                                      NUMBER 10-251-JVP-DLD

**NOTICE**

  Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

  In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

  ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

  Signed in Baton Rouge, Louisiana, on September 27, 2010.

                 _____
                  **MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DAVID JACOBSON  (#558909)

VERSUS                                                                                    CIVIL ACTION

JAMES LEBLANC, ET AL                                                      NUMBER 10-251-JVP-DLD

## MAGISTRATE JUDGE'S REPORT

Pro se plaintiff, an inmate confined at C. Paul Phelps Correctional Center, Dequincy, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against the Louisiana Department of Public Safety and Corrections, Louisiana Department of Public Safety and Corrections Secretary James LeBlanc, Hunt Correctional Center (HCC) Warden Howard Prince, Phelps Correctional Center (PCC) Warden Robert Henderson and Laterda Drummond.  Plaintiff alleged that he was subjected to unconstitutional conditions of confinement while confined at Orleans Parish Prison (OPP), Drummond failed to transmit a demand for final resolution, waiver of extradition and other information to the Ocean Springs Police Department, he was denied access to the courts while confined at HCC, the law libraries at HCC, PCC and OPP are inadequate, the Administrative Remedy Procedure impedes his ability to access the courts and he was threatened for utilizing the administrative grievance procedure and accessing the courts in violation of his constitutional rights.

Subsection (c)(1) of 42 U.S.C. § 1997e provides the following:

> The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section

> 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

An in forma pauperis suit is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733 (1992); *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 1831-32 (1989); *Hicks v. Garner*, 69 F.3d 22, 24 (5th Cir. 1995). A court may dismiss a claim as factually frivolous only if the facts are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional. *Denton,* 504 U.S. at 33-34, 112 S.Ct. at 1733. Pleaded facts which are merely improbable or strange, however, are not frivolous for section 1915(d) purposes. *Id*.; *Ancar v. SARA Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). Dismissal under 28 U.S.C. §1915(d) may be made at any time before or after service of process and before or after an answer is filed. *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

## Personal Rights

Plaintiff brought this action purportedly on behalf of himself and other similarly situated persons for the alleged violation of their unspecified constitutional rights.

The right to bring an action under the civil rights act is personal in nature and may not be asserted by third parties. *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986). All persons who claim a deprivation of constitutional rights must prove some violation of their personal rights. *Id.* Plaintiff's claim regarding the alleged deprivation of the rights of unidentified inmates is not a personal right which he may assert.

## Eleventh Amendment Immunity

Plaintiff named the Louisiana Department of Public Safety and Corrections as a

defendant.

Under the Eleventh Amendment to the United States Constitution, an unconsenting state is immune from suits seeking monetary damages brought in federal courts by her own citizens as well as citizens of another state. *Edelman v. Jordan*, 415 U.S. 659, 94 S.Ct. 1347 (1974). Although Congress has the power to abrogate this immunity through the Fourteenth Amendment, it has not done so as to claims for deprivation of civil rights under color of state law. *See, Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666 (1976); *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139 (1979); *Edelman v. Jordan, supra*. Thus, absent consent by the state or congressional action, a state is immune from a suit for damages. Louisiana has not waived her sovereign immunity under the Eleventh Amendment, and is immune from suit in this action. The shield of immunity extends to the Louisiana Department of Public Safety and Corrections as an agency of the state and to the institutions it maintains. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312 (5th Cir. 1999); *Anderson v. Phelps*, 655 F.Supp. 560 (M.D. La. 1985).

### Orleans Parish Prison

Plaintiff alleged that in September 2009, he was confined in the Orleans Parish Prison (OPP). Plaintiff alleged that while confined at OPP, he was subjected to unconstitutional conditions of confinement and the prison's law library was inadequate in violation of his constitutional rights. Plaintiff alleged that Secretary LeBlanc knew or should have known of the alleged unconstitutional conditions at OPP and should have refrained from transferring him there.

Inmates have no justifiable expectation that they will be incarcerated in any particular prison within a state. *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741 (1983).

Administrative transfers of state prisoners to another prison, the conditions of which may be substantially less favorable, do not constitute deprivations of Fourteenth Amendment liberty requiring a due process hearing. *Meachum v. Fano*, 427 U.S. 270, 96 S.Ct. 2532 (1976).

Insofar as the plaintiff alleged that Secretary LeBlanc is responsible for the alleged unconstitutional conditions of confinement and inadequate law library at OPP, the claim is frivolous.

There is no legal basis for holding Secretary LeBlanc liable for the conditions of the plaintiff's confinement within OPP. In Louisiana, the responsibility for parish prisons is divided between the local governing authority and the sheriff. The governing authority is responsible for financing and maintaining the prison, LSA-R.S. 15:304[1], 15:702[2], and 33:4715[3], while the sheriff is responsible for the day-to-day operation of the parish prison, LSA-R.S. 15:704[4] and 33:1435[5]. In Louisiana, sheriffs are the final policy makers with respect to the management of jails. *See Jones v. St.Tammany Parish Jail*, 4 F.Supp.2d

---

[1] LSA-R.S. 15:304 provides in pertinent part: "All expenses incurred in the different parishes of the state or in the city of New Orleans by ... confinement ... of persons accused or convicted of crimes ... shall be paid by the respective parishes in which the offense charged may have been committed or by the city of New Orleans, as the case may be."

[2] LSA-R.S. 15:702 provides in pertinent part: "The governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons."

[3] LSA-R.S. 33:4715 provides in pertinent part: "The police jury of each parish shall provide ... a good and sufficient jail ...."

[4] LSA-R.S. 15:704 provides in pertinent part: "Each sheriff shall be the keeper of the public jail of his parish...."

[5] LSA-R.S. 33:1435(A) provides in pertinent part: "Each sheriff shall be keeper of the public jail of his parish...."

606, 613 (E.D. La. May 8, 1998). The sheriff's office controls the inmates of the jail, the employees of the jail, and the daily management and operation of the jail. See LSA-R.S. 33:1435; 15:704; *O'Quinn v. Manuel*, 773 F.2d 605, 609 (1985).

Because Secretary Leblanc has no authority over the operations or employees of OPP, he cannot be held legally responsible for the conditions within the prison system or the actions or inactions of prison personnel there.

### Detainer

Plaintiff alleged that on October 27, 2009, a detainer was lodged against him based on a warrant and information filed by the Ocean Springs Police Department, Mississippi. Plaintiff alleged that he advised Drummond, a Correctional Specialist I, of his desire to waive extradition and that under the Interstate Agreement on Detainers Act (IADA) the administration was required to forward documentation to the Jackson County prosecutor. Plaintiff alleged that Drummond failed to transmit a demand for final resolution, waiver of extradition and other information to the Ocean Springs Police Department as is required by the IADA.

Plaintiff alleged that after he was transferred to PCC, Warden Henderson and other prison personnel also failed to transmit the documentation to the Ocean Springs Police Department as is required by the IADA. Plaintiff alleged that Warden Henderson instructed him to contact the Jackson County Mississippi District Attorney to request resolution of the matter.

The IADA is a compact entered into by 48 States, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State. *New York v. Hill*, 528 U.S. 110, 120 S.Ct. 659 (2000).

Louisiana and Mississippi have not adopted the IADA. 18 U.S.C.App. § 2.

Prison officials have no duty under the IADA to assist the plaintiff in transmitting his demand for final resolution of the pending charges lodged against him in the State of Mississippi.

### Indigent Legal Supplies

Plaintiff alleged that he was transferred to HCC on October 27, 2010[6], and was placed in administrative segregation. Plaintiff alleged that his personal property was placed in storage. Plaintiff alleged that inmates confined to administrative segregation must request legal assistance and indigent legal supplies. Plaintiff alleged that there were limits placed on the amount of legal supplies he was provided and he was not permitted to personally access the prison law library.

Plaintiff alleged that he was transferred to PCC on November 23, 2010.[7] Plaintiff alleged that indigent supplies were limited to 16 sheets of typing paper per month and an unspecified limited number of envelopes. Plaintiff further alleged that he must prepare his pleadings with the use of a pencil rather than an ink pen.

A substantive right of access to the courts has long been recognized. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494 (1977). Access to the courts is protected by the First Amendment right to petition for redress of grievances. *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979). That right has also been found in the Fourteenth

---

[6] The court will assume that the plaintiff was transferred to HCC in 2009 rather than 2010.

[7] The court will assume that the plaintiff was transferred to PCC in 2009 rather than 2010.

Amendment guarantees of procedural and substantive due process. *Ryland v. Shapiro*, 708 F.2d 967, 971-75, (5th Cir. 1983).

In its most obvious and formal manifestation, the right protects one's physical access to the courts. Thus, for example, prison officials cannot refuse to transmit, or otherwise block, through procedural devices, the transmission of legal documents which prisoners wish to send to the courts. Nor can they take other actions--such as taking or destroying legal papers--that have a similar effect. *Crowder v. Sinyard*, 884 F.2d 804 (5th Cir. 1989), *cert. denied*, 496 U.S. 924, 110 S.Ct. 2617 (1990). Some showing of detriment caused by the challenged conduct must be made in order to succeed on a claim alleging a deprivation of the right to meaningful access to the courts. *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987).

Although the plaintiff alleged that while he was confined in HCC administrative segregation he missed a court date and his counsel withdrew representation, he did not allege that these events were in any way related to a lack of legal supplies.

Plaintiff alleged no fact showing that he has been prejudiced in his ability to prepare and transmit a necessary legal document to a court as a result of insufficient legal supplies at either HCC or PCC.

### Inadequate Prison Law Libraries

Plaintiff alleged that the prison law libraries at HCC and PCC are inadequate. Specifically, the plaintiff alleged that at HCC and PCC, inmate counsel substitutes conduct legal research requested by a prisoner. Plaintiff alleged that the inmate counsel substitutes are not properly trained, have access to his legal documents and may act as informants to the prison administration. Plaintiff further alleged that the libraries do not contain adequate

primary and secondary research materials, many research materials are outdated, and the Lexis keynote system does not provide parallel citations or headnotes.

Plaintiff alleged that he is entrenched in a fee dispute with former counsel and was forced to file a malpractice suit against him. Plaintiff further alleged that he lost a right to appeal because he was unable to communicate with counsel. Plaintiff further alleged that he has had pleadings returned and/or rejected and the pleadings had to be resubmitted because he named the wrong parties and he had to amend a complaint three times because he could not find the elements of a constitutional tort in a timely manner. Plaintiff alleged that he lost the opportunity to favorably settle a matter because he received inaccurate information in the law library. Finally, the plaintiff alleged that inmate counsel substitutes have provided him with inaccurate information and failed to provide him with cases related to municipal liability, which is an essential theory in a civil matter scheduled for trial in October.

Prisoners have a constitutional right of access to the courts that is "adequate, effective , and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1494 (1977). The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability-the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 354, 116 S.Ct. 2174, 2182 (1996). In *Lewis*, the Supreme Court stated:

> [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.... [T]he inmate therefore must

> go one step further and *demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.*

*Id*. at 351, 116 S.Ct. at 2180 (emphasis added).  *See also Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) ("the Supreme Court has not extended [the right of access to the courts] to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court") .

A prisoner cannot prevail on an access-to-the-courts claim without proving an actual injury.  *See Lewis v. Casey*, 518 U.S. at 350-52, 116 S.Ct. at 2179-81; *Christopher v. Harbury*, 536 U.S. 403, 415-16, 122 S.Ct. 2179, 2187 (2002).  The actual injury requirement is not satisfied by just any type of frustrated legal claim.  *Lewis*, 518 U.S. at 354, 116 S.Ct.  at 2181-82.

Plaintiff failed to identify a nonfrivolous, arguable underlying claim that he was unable to pursue as a result of the alleged inadequate prison law libraries and legal assistance program.

**Grievance Procedure**

Plaintiff alleged that the Administrative Remedy Procedure (ARP) is an unnecessary hurdle to pursuing his claims in the courts.  Specifically, the plaintiff alleged that the ARP has a provision which permits prison officials to backlog his administrative grievances and the ARP can take over 90 days to process.  Plaintiff further alleged that prison officials refuse to honor good faith attempts to resolve issues through the administrative grievance procedure.

The Administrative Remedy Procedure does not itself establish any federal right.  It is a mechanism for resolving disputes at the institutional level.

### Retaliation

Plaintiff alleged that he was threatened with administrative segregation, loss of good time and investigation for using the administrative grievance procedure. Plaintiff further alleged that he was threatened with being placed in lock down and administrative investigation for accessing the courts.

First, although the plaintiff named Secretary LeBlanc, Warden Prince, Warden Henderson and Drummond as defendants he failed to allege any facts against them regarding the alleged threats.

To be liable under § 1983, a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983). Plaintiff's allegation that Secretary LeBlanc, Warden Prince and Warden Henderson are responsible for the actions of their subordinates is insufficient to state a claim under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

Second, allegations of verbal abuse alone do not present claims under § 1983. "Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." *McFadden v. Lucas*, 713 F.2d 143 (5th Cir.), *cert. denied*, 464 U.S. 998, 104 S.Ct. 499 (1983); *Burnette v. Phelps*, 621 F.Supp. 1157 (M.D. La. 1985); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973).

Because it is clear that the plaintiff's claims have no arguable basis in fact or in law the complaint should be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

## RECOMMENDATION

It is the recommendation of the magistrate judge that the plaintiff's complaint be dismissed as frivolous pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (iii).

Signed in Baton Rouge, Louisiana, on September 27, 2010.

**MAGISTRATE JUDGE DOCIA L. DALBY**